IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 14-20071-06-JAR |
| ) | |
| RAMON ESPINOZA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant Ramon Espinoza's Motion to Suppress Statements (Doc. 106). On June 16, 2015, the Court held an evidentiary hearing on the motion to suppress. Having reviewed the evidence and arguments presented by the parties, the Court is now prepared to rule. As described more fully below, the Court denies Defendant's motion to suppress.

**I.     Facts**

Based on the testimony and other evidence submitted at the suppression hearing, the Court finds the following facts by a preponderance of the evidence. On September 5, 2014, pursuant to the execution of a Federal Arrest Warrant issued by the United States District Court, District of Kansas, Special Agents and Task Force Officers of the FBI located and arrested Defendant Ramon Gonzalez Espinoza. Defendant's first language is Spanish. He has lived in the United States since arriving in Florida as part of the Mariel Boatlift. After being arrested at his home, Defendant was transported to the Kansas City, Kansas Police Department ("KCKPD") where he made inculpatory statements to police officers after signing an English-language Advice of Rights form, waiving his *Miranda* rights.

FBI Task Force Officer Corey Horalek was assigned the team leader for Defendant's arrest. Special Agent Simon Golub was also present during the arrest and heard him communicate with Officer Horalek. After Defendant answered the door Officer Horalek asked him if he spoke English, to which Defendant replied "yes." Defendant and Officer Horalek spoke exclusively in English. Although Defendant has a strong accent, Defendant did not attempt to speak to Agent Horalek in Spanish nor give Officer Horalek any indication that he did not understand English. Defendant asked in English why he was being arrested, and told agents it must have something to do with past conduct. Officer Horalek told him that he could not talk to him about the case because he was not prepared to read him his *Miranda* rights yet. Defendant stated that he understood. Defendant never seemed confused, did not ask any of the officers to repeat themselves, and never asked for a translator. He appeared relaxed. Defendant's family was present during the arrest and spoke to one another and to Defendant in English.

Special Agent Golub rode in the back seat of the patrol car that transported Defendant to the KCKPD facility, which took approximately ten minutes. Special Agent Golub explained to Defendant where they were going, but otherwise did not converse with him. Defendant was very talkative during the drive, telling the officers about his experience in the Mariel Boatlift, and volunteering information about older conduct that he believed was the reason for his arrest. He was relaxed, calm, and friendly, and spoke entirely in English, although with an accent.

Dan Hajek, a special agent with the FBI, interviewed Defendant after he arrived at the KCKPD facility. Defendant was eager to speak with him and began to speak to him in English. Special Agent Horalek told Defendant that before they could speak, he first needed to advise Defendant of his right to have an attorney present. Defendant understood and continued to try to

speak to Special Agent Horalek.  Defendant never attempted to speak in Spanish to Special Agent Horalek.  Assessing Defendant's language skills based on this conversation, Special Agent Horalek provided Defendant with an English-language Advice of Rights form; he believed that Defendant could understand English.  SA Horalek read out loud each enumerated right on the form to Defendant in English and Defendant initialed beside each one.  Defendant then reaffirmed that he understood each right by replying "yes."  Defendant followed along as SA Horalek read through each listed right.  He never appeared confused or hesitated when initialing.

Based on his training and experience SA Horalek did not believe that Defendant required an interpreter and did not seek out an interpreter for the interview.  SA Horalek asked Defendant open-ended questions about the drug offenses he was investigating and repeated back Defendant's answers to ensure accuracy.  Defendant told SA Horalek about wire transfers he made on behalf of Co-Defendant Mario Saucedo-Avalos, providing locations of the wire transfers.  He also discussed his role driving Saucedo-Avalos to several addresses that were familiar to SA Horalek from his investigation.  During the interview, Defendant did not appear to have difficulty remembering details about the wire transfers or addresses to which he would drive Saucedo-Avalos.  He never requested an interpreter.

**II.    Discussion**

Under *Miranda v. Arizona*,[1] the prosecution may not use incriminating statements against a Defendant at trial unless it demonstrates that it employed certain procedural protections to

---

[1] 384 U.S. 436 (1966).

safeguard the Fifth Amendment privilege against self-incrimination.[2]  A *Miranda* warning is required when a defendant is (1) subject to interrogation, and (2) in custody.[3]

A defendant may waive *Miranda* rights, but the waiver of one's Fifth Amendment privilege against self-incrimination must be voluntary, knowing and intelligent.[4]  The purpose of the "knowing and voluntary" inquiry is to ascertain whether the defendant truly does understand the significance and consequences of his decision and whether the decision is uncoerced.[5]  A waiver is considered to be knowing and intelligent only if the defendant made it with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[6]  "Warnings given in a language which the defendant cannot comprehend do not convey the substance of the suspect's rights."[7]  The Court must "inquire whether the defendant knew that he did not have to speak to police and understood that statements provided to police could be used against him."[8]

There is no dispute in this matter that *Miranda* applied to Defendant's custodial interrogation at the KCKPD facility.  The only question is whether Defendant knowingly and intelligently waived his right to remain silent and to have an attorney present.  While the

---

[2]*Id*. at 444.

[3]*United States v. Griffin*, 7 F.3d 1512, 1517–18 (10th Cir. 1993) (citing *Miranda*, 384 U.S. at 444) (citations and quotation marks omitted).

[4]*See Moran v. Burbine*, 475 U.S. 412, 421 (1986) (citations omitted).

[5]*Godinez v. Moran*, 509 U.S. 389, 400–01 (1993).

[6]*Id.* at 421.

[7]*United States v. Alarcon*, 95 F. App'x 954, 956–57 (10th Cir. 2010) (citing *United States v. Bustillos-Munoz*, 235 F.3d 505, 517 (10th Cir. 2000)).

[8]*United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990).

evidence was undisputed that Spanish is Defendant's first language, the Court finds that Defendant could comprehend the *Miranda* warnings provided to him in English by SA Horalek, and that he understood he need not speak to police and that the statements could be used against him. From the time of his arrest, Defendant spoke to the officers involved exclusively in English. Their testimony was consistent that Defendant was eager to speak with them, in English, and that they had to repeatedly stop him from talking to them until they could transport him to the police facility and advise him of his rights. He advised the officers several time that he understood them. The Court credits the officers' testimony that Defendant comprehended them at the time of his arrest, in the patrol car, and when he was advised of his *Miranda* rights.

The Advice of Rights form signed by Defendant lists his rights in simple English. Defendant read these rights and SA Horalek read them aloud to Defendant. Defendant initialed next to each right and signed the form, attesting that he understood his rights and was willing to answer questions without an attorney present. Defendant also orally told SA Horalek that he understood his rights. The signed and initialed form corroborates the officers' testimony that Defendant understood his *Miranda* rights.

Importantly, during the interview itself, Defendant was asked open-ended questions in English, to which he responded in English with details about his role in sending wire transfers on behalf of Saucedo-Avalos, and in driving Saucedo-Avalos to various locations in the Kansas City area. Defendant never appeared confused during the interrogation, and never requested an interpreter. This information strongly suggests that he was able to both comprehend and communicate effectively in English.

There was evidence presented at the hearing about Defendant's English comprehension

at a June 3, 2015 voice exemplar.  While it is true that the Government provided Defendant with an interpreter for the exemplar, the Government argues that this was done out of an abundance of caution because the instant motion had been filed prior to that date.  The Court finds credible FBI Special Task Force Officer Edward Caballeros' testimony that despite being provided with translation services, Defendant could comprehend the questions posed to him in English.  In fact, at different points during the exemplar, Defendant paused when asked to describe certain pictures in Spanish, and began to answer in English instead.  Although the exemplar was conducted approximately eight months after the interrogation at issues, the Court finds that this evidence further supports the arresting officers' testimony that Defendant could comprehend English and understood the nature of the rights that he was waiving.

   Defendant's wife Martha Espinoza testified that Defendant prefers to speak English and that it is easier for him to understand complex issues if they are communicated to him in Spanish.  However, preference is not the test for whether Defendant understood the *Miranda* rights when they were read to him, nor for whether Defendant's waiver was knowing and intelligent.  Instead, the Court must consider whether he comprehended the nature of the rights he was waiving.  The Court has considered all of the testimony, including Officer Horalek's testimony that during the arrest, Defendant spoke to his family exclusively in English, as well as the Advice of Rights form signed and initialed by Defendant.  The Court finds that Defendant knowingly and intelligently waived his right to remain silent and to counsel during the September 5, 2014 interrogation.  Defendant's motion to suppress must therefore be denied.

   **IT IS THEREFORE ORDERED BY THE COURT** that  Defendant Ramon Espinoza's Motion to Suppress Statements (Doc. 106) is **denied**.

**IT IS SO ORDERED**.

Dated: July 14, 2015

                                        S/ Julie A. Robinson

                                        JULIE A. ROBINSON

                                        UNITED STATES DISTRICT JUDGE